UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
JANE DOE,

Civil Case No.: 20-cv-101

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff,

-*against*-                                                                     **COMPLAINT**

JETBLUE AIRWAYS CORPORATION,
And STEVEN TENORIO, individually

Defendants.
-----------------------------------------------------x

Plaintiff, JANE DOE, by and through her attorneys, DEREK SMITH LAW GROUP,

PLLC, hereby complains of defendants, JETBLUE AIRWAYS CORPORATION (hereinafter

"JET BLUE"), and STEVEN TENORIO, individually (hereinafter "TENORIO") upon

information and belief, as follow:

## NATURE OF CASE

Plaintiff, JANE DOE, complains pursuant to Title VII of the Civil Rights Act of 1964, as

codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of

1991, Pub. L. No. 102-166 ("Title VII"), the Administrative Code of the City of New York and

the laws of the State of New York and the laws of the State of California, based upon the

supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*,

383 U.S. 715 (1966), and 28 U.S.C. §1367 seeking declaratory relief and damages to redress the

injuries Plaintiff has suffered as a result of, *inter alia*, sex discrimination, gender discrimination,

sexual harassment, hostile work environment and retaliation by Defendants.

1

## JURISDICTION AND VENUE

1.  Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII.  The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

2.  Additionally, the Court has supplemental jurisdiction under the State and City laws of New York.

3.  Around June 13, 2019, Plaintiff JANE DOE, submitted a Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC").   The federal charge number is 520-2019-04181.

4.  Around October 8, 2019, Plaintiff JANE DOE received a Right to Sue Letter from the EEOC for her federal charge number 520-2019-04181.

5.  As such, Plaintiff has satisfied all administrative prerequisites and is timely filing this case within ninety (90) days of receiving her Right to Sue letter.

6.  Venue is proper in this court, as a substantial part of the events giving rise to this action arose in Queens County, within the Eastern District of New York, as well as because the Defendants reside within New York, and Defendant JETBLUE is incorporated in Queens County within the Eastern District of New York.

## PARTIES

7.  Plaintiff DOE is an individual woman residing in Queens, New York.

8.  At all times material, Plaintiff DOE was employed by Defendants JETBLUE AIRWAYS CORPORATION, and was based out of New York.

9.  Plaintiff DOE regularly flies through New York as part of her employment with Defendant

JETBLUE AIRWAYS CORPORATION. Plaintiff DOE is currently based out of J.F.K. International Airport and flies through New York at least two to three times a month while working for Defendant JETBLUE AIRWAYS CORPORATION.

10. At all times material, Defendant JETBLUE AIRWAYS CORPORATION was and still is a foreign business corporation doing business in the State of New York, with their principal place of business located at 27-01 QUEENS PLAZA NORTH LONG ISLAND CITY, NEW YORK, 11101.

11. Defendant JETBLUE AIRWAYS CORPORATION's decisions with respect to employee sexual assault and/or sexual harassment complaints stem from their corporate headquarters located in New York.  In fact, Defendant JETBLUE AIRWAYS CORPORATION maintains a pattern and practice stemming from their corporate headquarters located in New York of routinely ignoring employee complaints concerning sexual assault and/or sexual harassment.

12. At all times material, Defendant STEVEN TENORIO (hereinafter referred to as "TENORIO"), was and is an Inflight Crewmember employed by JETBLUE AIRWAYS CORPORATION.

## **RELEVANT FACTS**

13. Around June 22, 2009, Plaintiff began working for Defendants in Airport Operations.

14. Around February of 2014 Plaintiff became an Inflight Crewmember for Defendants.

15. Around February 22, 2019, Plaintiff worked on an inflight crew bound for San Francisco.  On the flight, Plaintiff discussed her plans for when she landed with the other crewmembers, including Defendant TENORIO.

16. Plaintiff agreed to go out for dinner and dancing with her colleague Ronald Banks ("Ronald") and Defendant TENORIO.

17. Plaintiff and Defendant TENORIO met up first and went to find something to eat, and then later they met up with Banks and went to Grubstake Diner after walking around for a bit.

18. While waiting for Banks in the lobby of their hotel, TENORIO sat down and nestled his head onto Plaintiff's chest in a sexual manner.

19. Plaintiff was uncomfortable with the unwanted physical contact, and asked TENORIO "Why are you laying on my chest?" Defendant TENORIO then got up and moved away from Plaintiff.

20. Once Banks arrived in the hotel lobby, the three left and went out to dinner. Over food and non-alcoholic drinks, the three discussed various topics, eventually moving the conversation back to the hotel lobby, where they were joined by Defendants' employee Andy Rawlins.

21. At approximately 4:00 AM, the group decided to call it a night and discussed plans for the following day.

22. The group then made their way to the elevators. Once inside the elevator, Plaintiff pressed the button for the 21st floor where her room was located. She was the only member of the group with a room on this floor.

23. When the doors to the elevator closed, Defendant TENORIO grabbed Plaintiff from behind and sexually assaulted her by squeezing her tightly against his body in a sexual manner.

24. TENORIO pressed his chin against Plaintiff's shoulder and stated loud enough for everyone in the elevator to hear, "She don't know she going to my room tonight. We going to have some fun."

25. The rest of the group in the elevator included male Jetblue employees as well as hotel guests.

26. The Hotel guests began laughing and encouraging TENORIO's behavior.

27. Plaintiff, petrified and embarrassed, tried to wiggle out of TENORIO's grasp but was unable to overpower him.

4

28. Upon arriving at Defendant TENORIO's floor, Plaintiff was relieved because she thought her torment would be over.

29. Instead, Defendant TENORIO forcefully pulled Plaintiff out of the elevator.  Plaintiff attempted to resist, grabbing onto the elevator railing, but Defendant TENORIO's strength was too much to overcome and he pulled her completely out of the elevator.

30. Once outside the elevator, Defendant TENORIO became noticeably more aggressive.  He picked Plaintiff up off of the ground, squeezed her tightly against him and began walking her towards his hotel room.

31. Plaintiff was terrified and in fear for her safety.  She wrestled her right hand free and dug her nails into Defendant TENORIO's neck in an effort to escape his clutches.

32. Plaintiff, was finally able to break free and make it back to the elevator and up to her hotel room. She spent the rest of the night too terrified to go to sleep and unsure of what to do.

33. Later that day, Plaintiff called Banks to ask him what she should do about Defendant TENORIO sexually assaulting and battering her.  Banks acknowledged that TENORIO was rough with Plaintiff, but pleaded with her to offer him the opportunity to apologize in an effort to stop Plaintiff from reporting him.

34. Ultimately, Plaintiff called the police to report what had happened to her.

35. While waiting for the police to arrive, Plaintiff called Jet Blue Crew Services and told them she had called the police.

36. Plaintiff then received a call from Banks who told her that he spoke with Defendant TENORIO and asked him "What happened last night? She felt like you violated her."  To this, TENORIO repulsively responded, "Oh no, I was just playing with her. Did she think I was trying to rape her?"

37. After meeting the police who were unable to locate Defendant TENORIO, Plaintiff went back to her room and began feeling aches and pains in her body as a result of the sexual assault and battery she suffered at the hands of Defendant TENORIO.

38. While resting in bed, Plaintiff typed up a statement to provide to her supervisors at Jet Blue.

39. Plaintiff then received a phone call from BlueWatch (Jetblue's security team).

40. After giving BlueWatch all the requested information, Plaintiff finished her statement and emailed it to all 3 HR related departments.

41. Plaintiff was then pulled from working on the flight, yet Jet Blue kept Defendant TENORIO working on the flight.

42. Plaintiff asked another employee to look at Defendant TENORIO's neck on the flight to see the markings that Plaintiff left on Defendant TENORIO when she dug her nails into him while he was sexually assaulting her.  The employee told Plaintiff that Defendant TENORIO kept his scarf on to cover up his neck the entire flight, something that was against company policy.

43. When Plaintiff returned on a separate flight, arriving at JFK International airport in New York, Plaintiff was greeted by 2 supervisors who informed her of an online resource for medial and therapeutic treatment offered by Jetblue.

44. When she arrived home, Plaintiff booked an appointment with a therapist and her personal doctor.

45. Plaintiff's doctor ordered x-rays which concluded the range of motion in her neck was limited and prescribed her medication and physical therapy.

46. On or about February 26, 2019, Plaintiff spoke with a Crew Relations investigator, Julie Paulino ("Julie").  Rather than conducting an investigation and asking relevant questions relating to the sexual assault and battery Plaintiff had suffered, Paulino asked Plaintiff about sex, her divorce,

6

and a dream she had told Banks about, none of which was relevant to the brutal sexual assault she had suffered.

47. Plaintiff complained that Jet Blue was clearly not conducting an investigation and that these lines of questions had no relevance to her allegations.

48. Crew Relations investigator Paulino stated that JETBLUE had substantiated that Defendant TENORIO had physically assaulted Plaintiff, but refused to provide any information regarding any corrective action to be taken against Defendant TENORIO, and stated that he was not being terminated.  She also indicated that Plaintiff should interact with Defendant TENORIO and be respectful and professional with him, and that she could try to avoid him based on seniority but there was nothing they could do to ensure Plaintiff would not be forced to interact with Defendant TENORIO.

49. To date Jetblue has taken no initiative to ensure that Plaintiff will not work on the same flight as Defendant TENORIO.  Plaintiff has to frantically check her schedule before each flight, adding to her mental distress, and her only option if she is booked on the same flight is to call in sick and lose pay.

50. Plaintiff has also had nightmares of seeing Defendant TENORIO in the terminal and of Defendant TENORIO dragging Plaintiff into a bathroom and beating her bloody to the ground.

51. To date, Defendant TENORIO continues to be an active Jet Blue flight attendant, working various flights since he assaulted and battered Plaintiff.

52. Defendants Jet Blue took no corrective action relating to plaintiff's complaint.

53. Defendant TENORIO assaulted and battered Plaintiff DOE, with the intent of sexually assaulting and raping her, because of her sex and gender.

54. Plaintiff DOE reported the assault and battery, attempted rape and sex and gender discrimination

to Defendant JETBLUE in their New York headquarters, but no corrective action was ever taken against Defendant TENORIO.

55. Not only did Defendant JET BLUE fail to terminate Defendant TENORIO, they failed to even guarantee that Plaintiff would not run into Defendant TENORIO while at work.

56. In fact, the only option was for Plaintiff to bid out of aircraft flights because Defendant TENORIO would be on those flights.  However, bidding out precludes Plaintiff from more than seven hundred and fifty (750) flights resulting in the significant loss of seniority status and financial opportunities.

57. As a result, on August 18, 2019, Plaintiff was forced to work alongside Defendant Tenorio, which made Plaintiff extremely uncomfortable.

58. Defendants discriminated against Plaintiff, including creating a hostile work environment for Plaintiff, because of her sex and gender, and because she complained of discrimination.

59. Defendants retaliated against Plaintiff because she complained of the severe sexual assault she was forced to endure and because she complained of discrimination.

60. As a result of the Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

61. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

62. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all the Defendants, jointly

and severally.

63.     The above are just some examples of some of the unlawful discrimination and retaliation to which Defendants subjected Plaintiff.

64.     Defendants' actions constituted a continuing violation of the applicable federal, state city and county laws.


**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
**On Behalf of Plaintiff JANE DOE**
**(Not Against Individual Defendants)**

65.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

66.     Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer practices, It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

67.     JET BLUE DEFENDANTS engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by allowing sex discrimination, gender discrimination and a hostile work environment.


**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII**
**On Behalf of Plaintiff JANE DOE**
**(Not Against Individual Defendants)**

68.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this

complaint as if fully set forth at length.

69.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a)      provides that

it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice

made an unlawful employment practice by this subchapter, or because [s]he has made a charge,

testified, assisted or participated in any manner in an investigation, proceeding, or hearing under

this subchapter."

70.    JET BLUE DEFENDANTS engaged in unlawful employment practice prohibited by 42 U.S.C.

§2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions or privileges

of employment because of Plaintiff's opposition to the unlawful employment practices of

Defendants.

**AS A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**NEW YORK STATE LAW**
**(Against All Defendants)**

71.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this

complaint as if fully set forth at length.

72.    Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an

employer or licensing agency, because of an individual's age, race, creed, color, national origin,

sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital

status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge

from employment such individual or to discriminate against such individual in compensation or

in terms, conditions or privileges of employment."

73.    Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff

because of her sex and gender.

74. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW
### (Against All Defendants)

75. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

76. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

77. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

## AS A FIFTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## NEW YORK STATE LAW
### (Against All Defendants)

78. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

79. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

80. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against the

Plaintiff.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against All Defendants)

81.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this

complaint as if fully set forth at length.

82.   The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful

discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the

actual or perceived age, race, creed, color, national origin, gender, disability, marital status,

sexual orientation or alienate or citizenship status of       any person, to refuse to hire or

employ or to bar or to discharge from employment such person or to discriminate against such

person in compensation or in terms, conditions or privileges of employment."

83.   Defendants engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code Title 8, by creating and maintaining discriminatory working conditions

and a hostile work environment, and otherwise discriminating against Plaintiff because of her

sex and gender.

84.   Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of

New York City Administrative Code Title 8.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against All Defendants)

85.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this

complaint as if fully set forth at length.

86. The New York City Administrative Code Title 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

87. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against Plaintiff because of her opposition to the unlawful employment practices of Plaintiff's employer.

**AS AN EIGHTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

88. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

89. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

90. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

**AS A NINTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

91. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

92.     Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

93.     Defendants violated the above section as set forth herein.

**AS A TENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

94.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

95.     Section 8-107(13) entitled Employer Liability for Discriminatory Conduct by Employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise

reasonable diligence to prevent such discriminatory conduct.

96.    Defendants violated the above section as set forth herein.

### AS AN ELEVENTH CAUSE OF ACTION FOR
### ASSAULT AND BATTERY
### AGAINST DEFENDANT TENORIO INDIVIDUALLY,

97.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

98.    That the aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness and recklessness of Defendants, their agents, servants and/or employees, suddenly and without provocation did physically assault and batter Plaintiff herein.

### AS A TWELFTH CAUSE OF ACTION
### GENDER MOTIOVATED VIOLENCE PROTECTION ACT
### ON BEHALF OF PLAINTIFF JANE DOE
### AGAINST DEFENDANT TENORIO, INDIVIDUALLY,

99.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

100.   N.Y. ADC. LAW § 8-903 states in relevant part "For purposes of this chapter: a. "Crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction. b. "Crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

101.    N.Y. ADC. LAW § 8-904 : NY Code – Section 8-904: Civil Cause of Action states in relevant part "Except as otherwise provided by law, any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual in any court of competent jurisdiction for any or all of the following relief: 1. compensatory and punitive damages; 2. injunctive and declaratory relief; 3. attorneys' fees and costs; 4. such other relief as a court may deem appropriate."

102.    N.Y. ADC. LAW § 8-905 Limitations states in relevant part: "a. A civil action under this chapter must be commenced within seven years after the alleged crime of violence motivated by gender as defined in section 8-903 of this chapter occurred. . . . c. Nothing in this section requires a prior criminal complaint, prosecution or conviction to establish the elements of a cause of action under this chapter.

103.    Defendant's conduct constituted a crimes of "violence motivated by gender" under The Victims of Gender-Motivated Violence Protection Act ("VGMVPA").

104.    As a result of Defendant's acts, Plaintiff has been damaged in an amount to be determined at the time of trial.


**AS A THIRTEENTH CAUSE OF ACTION**
**FOR INTENTIONAL INFLICTION OR EMOTIONAL DISTRESS**
**(AGAINST ALL DEFENDANTS)**

105.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

106.    Defendants' behavior was extreme and outrageous to such extent that the action was atrocious and intolerable in a civilized society.

107.   Defendants' conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

108.   Defendants caused Plaintiff to fear for her own safety.

109.   Defendants' breach of their duties to Plaintiff caused Plaintiff to suffer numerous injuries as set forth herein.

110.   As a result of Defendants' acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

## AS A FOURTEENTH  CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST ALL DEFENDANTS)

111.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

112.   Defendants knew, or reasonably should have known, that Defendants were engaging in the unlawful behavior described herein above.

113.   At all times material herein, Defendants knew, or reasonably should have known, that the conduct, acts, and failures to act of all other Defendants and/or supervisors, agents and employees as described herein above violated Plaintiff's rights under federal, state and municipal statutes, codes and ordinances.

114.   At all times material herein, Defendants knew, or reasonably should have known, that the incidents, conduct, acts, and failures to act described herein above, would and did proximately result in emotional distress to Plaintiff's, including, but not limited to, loss of sleep, anxiety, tension, depression, and humiliation.

115.   At all times material herein Defendants, and each of them, knew, or in the exercise of reasonable care should have known, that unless Defendants, and each of them, intervened to

protect Plaintiffs, and to adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize the conduct, acts, and failures to act, of all other Defendants and/or supervisors, agents or employees as alleged herein above, said conduct, acts, and failures to act would continue, thereby subjecting Plaintiff to personal injury and emotional distress.

116. Defendants, and each of them, knew, or in the exercise of reasonable care should have known, that unless Defendants, and each of them, intervened to protect Plaintiffs, and to adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize the conduct, acts, and failures to act of the Defendants and others as described herein, Defendants' failure to so protect, supervise, and intervene would have the effect of encouraging, ratifying, condoning, exacerbating, increasing and worsening said conduct, acts, and failures to act.

117. At all times material herein, Defendants, and each of them, had the power, ability, authority, and duty to so intervene, supervise, prohibit, control, regulate, discipline, and/or penalize the conduct of all other Defendants and/or supervisors, agents or employees as described herein above.

118. Despite said knowledge, power, and duty, Defendants and each of them negligently failed to act so as to prevent, supervise, prohibit, control, regulate, discipline, and/or penalize such conduct, acts, and failures to act, or to otherwise protect Plaintiff.

119. As a direct and proximate result of the failure of Defendants to protect Plaintiff, and to adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize the conduct, acts, and failures to act of all other Defendants and/or supervisors, agents or employees as alleged herein above, said conduct, acts, and failures to act were perceived by them as, and in fact had the effect of, ratifying, encouraging, condoning, exacerbating, increasing, and/or worsening said conduct, acts, and failures to act.

120.   At all times material herein, the failure of Defendants to protect Plaintiff, and to adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize the conduct, acts, and failures to act of all other Defendants and/or supervisors, agents or employees violated Plaintiff's rights under federal, state, and municipal statutes, codes and ordinances.

121.   As a direct and proximate result of Defendants' actions and failures to act, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress; she has incurred and will continue to incur medical expenses for treatment by mental health and other health professionals, and for other incidental expenses; and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

122.   Defendants' conduct as described herein was malicious and oppressive, and done with a conscious disregard of Plaintiff's rights.  The acts of Defendants were performed with the knowledge of an employer's economic power over its employees.  Defendants, through their officers, managing agents and/or supervisors, authorized, condoned and ratified the unlawful conduct of all of the other Defendants in this action.  Consequently, Plaintiff is entitled to punitive damages from all Defendants.

**AS A FIFTEENTH CAUSE OF ACTION**
**SEXUAL HARASSMENT IN VIOLATION OF GOVERNMENT CODE § 12955(a), (d)**
**(AGAINST ALL DEFENDANTS)**

123.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

124.   At all times herein mentioned, FEHA, Government Code section 12955(a) and (d), was in

full force and effect and was binding on defendants.     This statute requires defendants not to sexually harass their employees.

125.   As identified herein, during plaintiff's employment with defendants, defendants engaged in actions that constituted sexual harassment of plaintiff.  These actions created a hostile working environment for plaintiff.

126.   All of these actions were taken against plaintiff's will and desire and over her protests.

127.   As a proximate result of defendants' willful, knowing, and intentional  sexual harassment of plaintiff, plaintiff has sustained and continues to sustain damages, including losses of earnings and benefits, according to proof.

128.   As a proximate result of defendants' willful, knowing, and intentional sexual harassment of plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

129.   Defendants' sexual harassment was done intentionally, in a malicious, oppressive, fraudulent manner, entitling plaintiff to punitive damages.

130.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.


### AS A SIXTEENTH CAUSE OF ACTION
### FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION
### IN VIOLATION OF GOVERNMENT CODE § 12940(k)
### (AGAINST ALL DEFENDANTS)

131.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

132.   At all times herein mentioned, FEHA, Government Code section 12940(k), was in full force and effect and was binding on defendants. This statute states that it is an unlawful employment practice in California for an employer "to fail to take all  reasonable steps

necessary to prevent discrimination and harassment from occurring."

133. During the course of plaintiff's employment, defendants failed to prevent their employees from engaging in intentional actions that resulted in plaintiff's being treated less favorably because of plaintiff's protected status (*i.e.,* his race, national origin, color, sexual orientation, and/or marital status). During the course of plaintiff's employment, defendants failed to prevent their employees from engaging in unjustified employment practices against employees in such protected classes. During the course of plaintiff's employment, defendants failed to prevent a pattern and practice by their employees of intentional discrimination and harassment on the basis of sex and gender, and/or other protected statuses or protected activities.

134. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

135. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

136. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

137. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

138. Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling plaintiff to punitive damages against defendants.

## AS A SEVENTEENTH CAUSE OF ACTION
## RETALIATION IN VIOLATION OF FEHAF GOVERNMENT CODE § 12900, *et seq.*
## (AGAINST ALL DEFENDANTS)

139. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this

complaint as is fully set forth at length.

140.   Plaintiff's complaints to defendants about sexual harassment protected by FEHA, Government Code section 12900, *et seq.,* were motivating factors in defendants' decision not to retain, hire, or otherwise employ plaintiff in any position and/or to take other adverse employment action, including constructive employment termination, against plaintiff.

141.   Plaintiff complained to defendants about the sexual harassment and assault she endured and Defendants took no reasonable steps to prevent Plaintiff from encountering her attempted rapist, and nothing was done to remedy the discrimination Plaintiff endured.   Defendants also took Plaintiff off of the flight when she complained about the attempted rape while allowing her attempted rapist to work the flight.   Defendants also require Plaintiff to lose seniority and paying job opportunities in order to avoid interacting with her attempted rapist.   As such, Defendants retaliated against her for his complaints of sexual harassment.

142.   Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and defendants committed unlawful employment practices, including by the following, separate bases for liability:

> a. Barring, discharging, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's actual and/or perceived sex/gender and/or other protected characteristics, in violation of Government Code section 12940(a);
>
> b. Retaliating against plaintiff for her complaints to defendants about the sexual harassment she experienced by taking adverse employment actions against her, in violation of Government Code section 12940(f); Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's sex/gender, and/or other protected characteristics, in violation of Government Code section 12940(j);
>
> c. and retaliation on the basis of actual and/or perceived sex/gender, in violation of Government Code section 12940(k);
>
> d. Retaliating against plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing defendant's failure to recognize such rights, including the right

to be free of discrimination, in violation of Government Code section 12940(h).

143.   As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

144.   As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

145.   Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling plaintiff to punitive damages against defendants.

146.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

147.   Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

Dated: Los Angeles, California
    January 6, 2020

DEREK SMITH LAW GROUP, PLLC
*Attorneys for Plaintiff*
By:    */s/Abraham Z. Melamed*
    Abraham Z. Melamed, Esq.
    One Penn Plaza, Suite 4905
    New York, New York 10119
    (212) 587-07